# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| OTIS CASH, | ) |
| Plaintiff, | ) ) |
| | ) Civil Action No. |
| vs. | ) ) |
| GLIDEWELL SPECIALTIES FOUNDRY COMPANY, | ) ) ) |
| Defendant. | |

## COMPLAINT

## I. JURISDICTION

1. This is a suit for unlawful termination of employment instituted pursuant to the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA"). The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(4).

2. Plaintiff Otis Cash ("Plaintiff") timely filed his charge of discrimination against defendant Glidewell Specialties Foundry Company ("Defendant") with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the last act of discriminatory treatment. Plaintiff has further filed this suit within 90 days after receipt of his right-to-sue letter.

## II. PARTIES

3. Plaintiff is a citizen of the United States over the age of nineteen and a resident of Bibb County, Alabama.

4. Defendant is an Alabama corporation with a principal place of business in Calera, Shelby County, Alabama.

## III. FACTS

5. In or about April of 2017, Plaintiff became employed by Defendant.

6. Plaintiff worked as a Grinder.

7. During the events of this case, Plaintiff suffered from, among other things, nerve root impingement of his lumbar spine.

8. The impingement causes Plaintiff pain, stiffness, and weakness in his back and legs and did so during the events of this case.

9. In or about latter April of 2020, Plaintiff's primary care physician advised Plaintiff to take off work until he could see a neurosurgeon about his back.

10. Plaintiff thereafter went to Defendant's Office Manager, Renae Benton, and asked for FMLA paperwork.

11. Plaintiff told Benton it was because of problems with his back.

12. Benton gave Plaintiff an FMLA medical certification form and told him that he could be off work for six weeks and would be terminated if he did not return after that.

13. On or about April 27, 2020, Plaintiff gave to Benton the certification completed by his primary care physician.

14. The certification provided that Plaintiff was suffering from, among other things, "root impingement of the lumbar spine."

15. The certification further provided that Plaintiff's condition had commenced approximately April 21, 2020 and was expected to last for six months to a year.

16. The certification further provided that Plaintiff was unable to perform the functions of his job, including lifting, pulling, crawling, grinding, walking, running, and climbing.

17. The certification further provided that Plaintiff had been referred to a neurosurgeon, that continuous leave was "possibl[e] depending on what the specialist sa[id]," and that Plaintiff's period of incapacity was "unknown but 4-20-20- 8/20/20."

18. The certification further checked the "yes" box for the question: "Will the employee need to attend follow-up treatment or work part-time or on a reduced schedule because of the employee's medical condition."

19. The certification did not, however, provide any information responsive to follow-up questions regarding an estimated treatment schedule or an estimated part-time or reduced work schedule.

20. The certification further provided that Plaintiff would also need intermittent leave for flare-ups of his condition for "back pain, stiffness, pain radiating down legs, burning" with an estimated frequency of 1-2 times per 2-3 months, with each episode lasting 1-2 days.

21. On April 30, 2020, Plaintiff's physician faxed to Defendant a note taking Plaintiff off work from April 29 to return to work on May 4.

22. On May 11, 2020, Plaintiff's physician faxed to Defendant a note taking Plaintiff off work from May 11 to return to work on May 13.

23. On May 13, 2020, Plaintiff's physician faxed to Defendant a note taking Plaintiff off work from May 11 to return to work on May 18.

24. On May 18, 2020, Plaintiff's physician faxed to Defendant a note taking Plaintiff off work from May 11 to return to work on May 20.

25. During the course of these absences, Plaintiff saw the neurosurgeon, who scheduled surgery on Plaintiff's back.

26. During the course of these absences, Plaintiff called Benton a couple of times to check and make sure she was getting the faxed excuses from his physician.

27. Benton told Plaintiff that she was.

28. On or about May 19, 2020, Plaintiff called Benton to discuss his returning to work the next day.

29. Benton told Plaintiff that he was fired for not having called in to report his absence that same day, May 19.

30. Benton knew that Plaintiff was on medical leave until May 20.

31. Further, neither Benton nor anyone else had told Plaintiff that he was supposed to call in every day while he was on medical leave.

32. Further, Defendant had no policy that employees on approved medical leave for a certain period of time were also supposed to call in every day to report absences during that period.

33. Defendant never requested any clarification to or additional information for the medical certification submitted by Plaintiff's physician.

34. Defendant never requested any re-certification from Plaintiff's physician.

35. As a result of his termination, Plaintiff lost his medical insurance.

36. As a result of losing his medical insurance, Plaintiff was unable to have the surgery on his back.

## IV. CAUSES OF ACTION

## COUNT I

## ADA

37. Paragraphs 1-33 above are incorporated by reference.

38. Defendant was an employer as that term is contemplated under the ADA during the events of this case.

39. Plaintiff's nerve root impingement of his lumbar spine constituted a physical impairment under the ADA during the events of this case.

40. Due to this impairment, Plaintiff was substantially limited with respect to the major life activities of performing manual tasks, walking, standing, lifting, bending, and working, and the major life activity of the operation of his musculoskeletal and neurological systems.

41. Plaintiff is and was during the events of this case disabled under the ADA.

42. Alternatively, Defendant regarded Plaintiff as disabled.

43. Plaintiff was and is a qualified individual able to perform the essential functions of his position, with accommodation.

44. Plaintiff's advising Defendant of his disability and requesting time off from work because of it constituted a request for a reasonable accommodation for that disability under the ADA.

45. Defendant's allowing Plaintiff this time off from work would have not caused an undue burden to it.

46. Defendant violated Plaintiff's rights under the ADA by terminating his employment (a) because of his disability, real or perceived, (b) as a result of Defendant's failure to provide a reasonable accommodation for that disability in allowing him the time off from work, and/or (c) in retaliation for Plaintiff's request for an accommodation for that disability in taking time off work because of it.

47. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, emotional distress and mental anguish, as well as continued physical pain and suffering and diminished utility of his back and loss of employment opportunities due to the untreated impingement.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing him into the position he would have occupied in the absence of discrimination (or, alternatively, providing front-pay), providing back-pay and lost benefits, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT II

## FMLA

48. Paragraphs 1-36 above are incorporated by reference.

49. Defendant was a covered employer under the FMLA during the course of events set forth above.

50. Plaintiff was an eligible employee under the FMLA during the course of events set forth above, to-wit:

(a) Plaintiff had been employed by Defendant for at least 12 months prior to the events at issue;

(b) Plaintiff had worked at least 1,250 hours in his service to Defendant in the 12 months prior to the events at issue; and

(c) Plaintiff was employed at a worksite where 50 or more employees were employed by Defendant within 75 miles.

51. Plaintiff's nerve root impingement of his lumbar spine constituted a serious health condition under the FMLA in that it involved continuing treatment by a health care provider as defined in 29 C.F.R. §825.115(a) and/or a chronic condition as defined in 29 C.F.R. §825.115(c).

52. In reporting to Defendant the cause for his absences due to his serious health condition referenced above, including submission of an FMLA medical certification and excuses from work from his health care provider, Plaintiff met his obligation of apprising Defendant that his absences were likely FMLA-qualifying.

53. In the event that the medical certification submitted by Plaintiff was considered incomplete, Defendant violated Plaintiff's FMLA rights in failing to (a) advise him in writing of the incompleteness and explain what additional information was necessary to make the certification complete, and (b) provide Plaintiff at least seven days to cure the deficiency.  29 CFR § 825.305(c).

54. In the event that the medical certification submitted by Plaintiff was considered insufficient, Defendant violated Plaintiff's FMLA rights in failing to (a) advise him in writing of the insufficiency and explain what additional information was necessary to make the certification sufficient, and (b) provide Plaintiff at least seven days to cure the deficiency. 29 CFR § 825.305(c).

55. Defendant's failure to designate Plaintiff's absences during his medical leave referenced above as FMLA-qualifying interfered with Plaintiff's FMLA rights. 29 CFR § 825.301(e).

56. In terminating Plaintiff, Defendant violated his rights under the FMLA by (a) interfering with his right to take leave covered by the FMLA, and/or (b) retaliating against him for availing himself of his rights under the FMLA.

57. Defendant knew, or showed reckless disregard for whether, its act of terminating Plaintiff violated the FMLA.

58. Defendant acted in willful violation of the FMLA.

59. As a result of the above described unlawful act, Plaintiff has been made to suffer lost wages and benefits.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions violated the FMLA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from further violating Plaintiff's FMLA rights;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing him in the position he would have occupied in the absence of Defendant's violation of his FMLA rights (or, alternatively, providing front-pay), providing back-pay and restoration of lost benefits and perquisites of employment, and ordering Defendant to pay liquidated damages;

(iv) That the Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

        Respectfully submitted,

        s/ Adam M. Porter
        Adam M. Porter
        Attorney for Plaintiff
        Adam M. Porter, LLC
        2301 Morris Avenue, Suite 102
        Birmingham, Alabama 35203
        Phone: (205) 322-8999
        Facsimile: (205) 402-4619
        Email: adam@adamporterlaw.com

Plaintiff requests trial by struck jury.

        s/ Adam M. Porter
        Attorney for Plaintiff

Defendant's Address:
Glidewell Specialties Foundry Company
c/o David A. Glidewell, Registered Agent
600 Foundry Rd.
Calera, AL 35040